# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 148

OCTOBER TERM, A.D. 2015

November 23, 2015

JONMICHAEL GUY,

Appellant
(Petitioner),

v.

ROBERT LAMPERT, Wyoming Department of
Corrections Director, and STEVE HARGETT,
Wyoming Medium Correctional Institution Warden,

Appellees
(Respondents).

S-15-0106

*Appeal from the District Court of Goshen County*
*The Honorable Keith Kautz, Judge*

*Representing Appellant:*

*Pro se.*

*Representing Appellees:*

*Peter K. Michael, Attorney General; David L. Delicath, Deputy Attorney General; James Michael Causey, Senior Assistant Attorney General; Christyne M. Martens, Assistant Attorney General.*

*Before BURKE, C.J., and HILL, DAVIS, and FOX, JJ., and FENN, D.J.*

**NOTICE:** **This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, District Judge.**

[¶1]  Appellant, JonMichael Guy ("Guy"), filed a petition for declaratory judgment, asking the district court to find that Director Robert Lampert and Warden Steve Hargett[1] (collectively "Appellees"), violated the Wyoming Public Records Act ("WPRA") by delaying the production of a record he had requested under the act. He also asked the district court to declare that the Department of Corrections ("DOC") had to produce certain types of records if he requested them in the future, and he asked for an order requiring the staff of the DOC to be trained on the application of the WPRA. The Appellees filed a motion to dismiss on the grounds that the district court lacked subject matter jurisdiction, or the petition failed to state a claim upon which relief could be granted. Guy then filed a motion to amend his petition. The district court dismissed the petition without ruling on Guy's motion to amend. This appeal followed. We affirm.

## *ISSUES*

[¶2]  Appellant phrases the issues as follows:

> 1. Did the district court abuse its discretion when it denied Mr. Guy leave to amend his pleading?
>
> 2. Did the district court abuse its discretion when it granted Appellee's (sic) motion to dismiss?

[¶3]  Appellees phrase the issues as follows:

> 1. Wyoming Rule of Civil Procedure 12 allows a district court to dismiss a case when the court lacks subject matter jurisdiction or when a complaint fails to state a claim on which relief can be granted. JonMichael Guy's request to view a record under the Wyoming Public Records Act was granted, but he petitioned the district court for additional relief. Did the district court err by dismissing Guy's petition?
>
> 2. After a responsive pleading has been filed by the defendant, a plaintiff may amend a complaint only after receiving permission from the court. Guy sought to amend his petition to include citations to the Uniform Declaratory Judgments Act even though his claims did not

---

[1] The original caption for this case incorrectly identified the Wyoming Medium Correctional Institution Warden as Donald Hargett instead of Steve Hargett.

1

meet its justifiability (sic) requirements. Did the district court abuse its discretion by dismissing his petition without allowing the amendment?

*FACTS*

[¶4] Guy is an inmate at the Wyoming Medium Correctional Institution. On June 22, 2014, he sent an internal inmate communication form to Steve Hargett, the warden of the Wyoming Medium Correctional Institution, requesting permission to view the DOC's Policy and Procedure #1.215, Code of Ethics. On June 23, 2014, Warden Hargett denied the request on the grounds that the Code of Ethics had not been preapproved for inmate review. Later that day, Guy resubmitted his request, this time stating that it had been filed under the WPRA. Guy also sent a similar request to Steve Lindly, the Deputy Director of the DOC. On June 24, 2014, Warden Hargett denied Guy's request and informed Guy that he was not the person who determined which policies and procedures were available for inmate review, and he did not believe the WPRA applied to the DOC's policies and procedures. Guy took no further action at that time.

[¶5] On July 14, 2014, Deputy Director Lindly responded to Guy's June 23, 2014, request. He explained that while the request had initially been denied, the DOC had undertaken further review of the requested policy, had determined that it was a public record, and Guy should be allowed to view it. Arrangements were made for Guy to view the policy in the prison library a few days later.

[¶6] On July 18, 2014, Guy filed a grievance against Warden Hargett via the DOC's internal inmate grievance process. Guy alleged that Warden Hargett had unlawfully denied Guy's public records request. As a remedy for his grievance, Guy requested that Warden Hargett receive training on the WPRA and pay a $750.00 fine. Guy's grievance was reviewed by Grievance Manager, Sergeant Shawn Hobson, who concluded that the matter had been resolved because Guy had been allowed to review the requested record. Guy used the prison's internal process to appeal Grievance Manager Hobson's decision. The internal appeal was handled by the Department Prison Division Administrator, Dan Shannon, who likewise determined that no violation of the WPRA had transpired, because Guy had been given access to the requested record.

[¶7] On September 5, 2014, Guy submitted a second internal appeal. On this occasion, his appeal was handled by Department Director, Robert Lampert. Guy sought to have Warden Hargett punished for the alleged WPRA violation stating: "Discipline him or I will ask a Judge to do so." Director Lampert reviewed Guy's appeal and ultimately denied the request for a remedy. Director Lampert indicated that at the time the Code of Ethics had been requested, it had not been reviewed for public dissemination consistent with the allowances within the WPRA. He further stated that Guy had been allowed to view the policy once the DOC had conducted the necessary review, so no further action

2

needed to be taken. On October 15, 2014, Guy sent a letter to Director Lampert in response to his denial of Guy's grievance. Guy once again threatened legal action if his "requested remedies [were not] satisfied in full." On October 22, 2014, Director Lampert replied to Guy's letter, but he did not reconsider his position on the alleged violation of the WPRA.

[¶8] On November 7, 2014, Guy filed his petition for declaratory judgment, naming Director Lampert and Warden Hargett as respondents. Guy alleged that Warden Hargett had violated the WPRA by initially denying his public records request. The petition stated that the suit was being brought pursuant to the WPRA, but the jurisdictional statement also stated that the district court had authority to grant a declaratory judgment pursuant to W.R.C.P. 57 and the Uniform Declaratory Judgments Act ("UDJA"), Wyo. Stat. Ann. § 1-37-102 and 103 (LexisNexis 2015). Guy asked for the following forms of relief:

> 36. Petitioner seeks declaratory judgment **Ordering** that WDOC policy is subject to the WPRA, that the term "reviewed in light of public dissemination" does not fall within one of the statutory exceptions for nondisclosure of a public record, that in withdrawing a record a custodian is required to petition the District Court for permission to withhold the record and may not blanket-block any class of records, that a custodian denying a public record must state to the applicant requesting the record his *legal* reason/s for nondisclosure.

> 37. Petitioner seeks declaratory judgment **Decreeing** that defendant Hargett's decision to withhold the record in contention because he believed WDOC policy is not subject to the WPRA or because he doesn't decide what WDOC policies are available for inmate review is contrary to law.

> 38. Petitioner seeks declaratory judgment **Decreeing** that in violating the WPRA and misapplying the law, defendants have violated Petitioner's constitutional rights.

> 39. Petitioner seeks an injunction **Ordering** defendants to take the most efficacious method to effect training on public records dissemination amongst themselves and their staff, or to otherwise educate themselves in matters concerning the same.

3

40. Petitioner seeks declaratory judgment **Decreeing** that the term "Approved for Inmate Distribution" as used to segregate WDOC policy is contrary to the WPRA.

41. Petitioner seeks an injunction **Ordering** the defendants to revise any and all WDOC policy or Operational Procedure which may be in any way contrary to the intent of the WPRA.

42. Petitioner seeks an injunction **Permanently Enjoining** the WDOC, its agents and/or representatives, from violating the timelines delineated by the WPRA without just cause, under strict threat of the civil penalty delineated by W.S. § 16-4-205 to be paid out of a violator's personal monies. Petitioner states that it is necessary for a violator to pay the penalty out of his personal monies and not be indemnified by his agency as it would be highly counterintuitive to use State funds to repay the State for a violation of its laws.

43. Petitioner seeks compensation for any and all costs inherent to this action. Such costs shall include but shall not be limited to compensation for all cost incurred for service and process, copies, time spent, postage, filing fee(s), and the like.

44. Petitioner seeks such other relief to which it may appear to this Court is just and proper. (Emphasis in original.)

[¶9]    On January 12, 2015, Appellees moved to dismiss Guy's petition, on the grounds that the court lacked subject matter jurisdiction, because the remedies set forth in the WPRA did not include the relief that Guy was seeking.  The Appellees alleged that the WPRA only allows an applicant, like Guy, to bring the custodian of a requested record before the district court to explain a delay in producing a record or to show cause why the records request was denied.  The Appellees further argued that, because Guy had ultimately been able to review the Code of Ethics, the WPRA did not afford him any remedies.

[¶10] On January 22, 2015, Guy filed a motion to amend his petition along with a proposed amended petition.  Guy wished to amend his petition to clarify that it was brought under the UDJA, Wyo. Stat. Ann. §§ 1-37-101 through 1-37-115 (LexisNexis 2015).  He also added a paragraph to the jurisdictional statement alleging that his claims for injunctive relief were authorized by W.R.C.P. 65 and Wyo. Stat. Ann. § 1-28-102 (LexisNexis 2015).  Other than these two changes, the proposed amended petition was identical to the original petition in all material respects.

4

[¶11] On January 30, 2015, the district court signed an order dismissing the petition. The district court found that the WPRA defined Guy's right to access public records, as well as the remedies that were available to him if this access was denied. The court also found that Guy did not pursue the remedies that were available to him under the WPRA; instead, Guy attempted to resolve the issue through the DOC's internal grievance process, and the requested record was eventually produced for his review. The court concluded that the WPRA:

> provides for relief only when access to the public record is denied or when the custodian delays responding to the applicant for a reason the applicant believes is not good cause. . . . [T]he Act does not provide relief for an applicant who is unhappy with how an agency granted his public records application, and it most definitely does not provide for relief by declaratory judgment or monetary damages.

The district court ultimately found that it did not have jurisdiction under the WPRA to provide the relief Guy was seeking, and it granted the motion to dismiss without expressly ruling on the motion to amend.[2] This appeal followed.

## *STANDARD OF REVIEW*

[¶12] We review motions to dismiss pursuant to W.R.C.P. 12(b)(1) and 12(b)(6) similarly. Our review is *de novo,* and we employ the same standards and examine the same materials as the district court: we accept the facts alleged in the complaint or petition as true and view them in the light most favorable to the non-moving party. However, liberal construction of the pleadings does not "excuse omission of that which is material and necessary in order to entitle [one to] relief." *William F. West Ranch, LLC v. Tyrrell*, 2009 WY 62, ¶ 9, 206 P.3d 722, 726 (Wyo. 2009) (alteration in original) (quoting *Martinez v. Associates Fin. Servs. Co.*, 891 P.2d 785, 790 (Wyo. 1995)).

---

[2] Apparently unaware that the district court had dismissed the petition, both sides continued to file pleadings relating to the motion to amend. On February 2, 2015, after the district court had granted the motion to dismiss, Appellees filed their opposition to the proposed amendment. They argued that the amendment would be unnecessary and futile, because the requested relief was not available under the WPRA, and bringing the petition under the UDJA could not fix this fatal flaw. They also argued that a declaratory judgment action was not appropriate, because Guy's proposed amended petition did not present a justiciable controversy. On February 10, 2015, Guy filed his response to the Appellees' opposition to his motion to amend. He argued that the proposed amendment would fix the jurisdictional issue. He also asserted that he had pled sufficient facts and presented the court with a justiciable controversy that was appropriate for a declaratory judgment action.

5

[¶13]   Under W.R.C.P. 12(b)(1), we affirm dismissal only if those facts dictate judgment for the appellee as a matter of law.  *Cantrell v. Sweetwater County Sch. Dist. No. 2*, 2006 WY 57, ¶ 4, 133 P.3d 983, 984 (Wyo. 2006).   Likewise, under W.R.C.P. 12(b)(6), dismissal is appropriate only if it is certain on the face of the complaint that the plaintiff cannot assert any facts that create entitlement to relief.  *Swinney v. Jones*, 2008 WY 150, ¶ 6, 199 P.3d 512, 515 (Wyo. 2008) (citing *Dowlin v. Dowlin*, 2007 WY 114, ¶ 6, 162 P.3d 1202, 1204 (Wyo. 2007)).

[¶14]  The district court's decision to deny a motion to amend is reviewed for an abuse of discretion, and it will be reversed only for an abuse of discretion shown by clear evidence. *Ekberg v. Sharp*, 2003 WY 123, ¶ 9, 76 P.3d 1250, 1253 (Wyo. 2003). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Selvey v. Selvey*, 2004 WY 166, ¶ 15, 102 P.3d 210, 214 (Wyo. 2004).   We have previously held that:

> A court abuses its discretion only when it acts in a manner which exceeds the bounds of reason under the circumstances. The burden is placed upon the party who is attacking the trial court's ruling to establish an abuse of discretion, and the ultimate issue is whether the court could reasonably conclude as it did.

*Cline v. Rocky Mountain, Inc.*, 998 P.2d 946, 951 (Wyo. 2000) (quoting *Johnston v. Stephenson*, 938 P.2d 861, 862 (Wyo. 1997)).

[¶15]  This case also involves the interpretation of the WPRA and the UDJA.   The standard of review applicable to statutory language is well established:

> "Questions of statutory interpretation are matters of law." *Chevron U.S.A., Inc. v. Dep't of Revenue*, 2007 WY 43, ¶ [9], 154 P.3d 331, 334 (Wyo. 2007), citing *Powder River Coal Co. v. Wyo. Dept. of Revenue*, 2006 WY 137, ¶ 9, 145 P.3d 442, 446 (Wyo. 2006). In interpreting statutes, our task is to give effect to the legislature's intent. We look first to the plain meaning of the language chosen by the legislature and apply that meaning if the language is clear and unambiguous. "A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability." *RME*

*Petroleum Co. v. Wyo. Dep't of Revenue*, 2007 WY
16, ¶ 25, 150 P.3d 673, 683 (Wyo. 2007).

*Bangs v. Schroth*, 2009 WY 20, ¶ 32, 201 P.3d 442, 456 (Wyo. 2009). We will not "enlarge, stretch, expand, or extend a statute to matters that do not fall within its express provisions." *Redco Constr. v. Profile Prop., LLC*, 2012 WY 24, ¶ 26, 271 P.3d 408, 416 (Wyo. 2012) (quoting *Cheyenne Newspapers, Inc. v. Bldg. Code Bd. of Appeals*, 2010 WY 2, ¶ 9, 222 P.3d 158, 162 (Wyo. 2010)). In addition, we have long held that:

> The omission of words from a statute must be considered intentional on the part of the legislature. Words may not be supplied in a statute where the statute is intelligible without the addition of the alleged omission. Words may not be inserted in a statutory provision under the guise of interpretation. The Supreme Court will not read into laws what is not there. This court will not supply omissions in a statute and redress is with the legislature. We are alerted by all this to the result that it is just as important to recognize what a statute does not say as it is to recognize what it does say.

*Adoption of Voss*, 550 P.2d 481, 485 (Wyo. 1976) (internal citations omitted).

### *DISCUSSION*

### A. *Granting the Motion to Dismiss*

[¶16] The Appellees moved to dismiss the petition under both W.R.C.P. 12(b)(1), lack of subject matter jurisdiction, and W.R.C.P. 12(b)(6), failure to state a claim on which relief can be granted. When granting the motion to dismiss, the district court stated: "this Court has no authority to grant relief to Guy on his Petition for Declaratory Judgment and at (sic) the Respondent's Motion to Dismiss is hereby granted . . . ." We may affirm the decision to dismiss the petition "on any legal ground appearing in the record." *Daniels v. Carpenter*, 2003 WY 11, ¶ 30, 62 P.3d 555, 566 (Wyo. 2003) (citing *Litzenberger v. Merge*, 698 P.2d 1152, 1153 (Wyo. 1985); *Mentock v. Mentock*, 638 P.2d 156, 159 (Wyo. 1981)).

[¶17] A citizen's right to access public records is set out in Wyo. Stat. Ann. § 16-4-202 (LexisNexis 2015), which reads:

> (a) All public records shall be open for inspection by any person at reasonable times, during business hours of the state entity or political subdivision, except as provided in this act

or as otherwise provided by law, but the official custodian of any public records may make rules and regulations with reference to the inspection of the records as is reasonably necessary for the protection of the records and the prevention of unnecessary interference with the regular discharge of the duties of the custodian or his office.

(b) If the public records requested are not in the custody or control of the person to whom application is made, the custodian or authorized person having personal custody and control of the public records shall notify the applicant within seven (7) business days from the date of acknowledged receipt of the request of the unavailability of the records sought, unless good cause exists preventing a response within such time period. In the event the applicant is not satisfied that good cause exists, the applicant may petition the district court for a determination as to whether the custodian has demonstrated good cause existed.

(c) If the public records requested are in the custody and control of the person to whom application is made but are in active use or in storage, and therefore not available at the time an applicant asks to examine them, the custodian or authorized person having personal custody and control of the public records shall notify the applicant of this situation within seven (7) business days from the date of acknowledged receipt of the request, unless good cause exists preventing a response within such time period. In the event the applicant is not satisfied that good cause exists, the applicant may petition the district court for a determination as to whether the custodian has demonstrated good cause existed. If a public record is readily available, it shall be released immediately to the applicant so long as the release does not impair or impede the agency's ability to discharge its other duties.

(d) If a public record exists primarily or solely in an electronic format, the custodian of the record shall so inform the requester. Electronic record inspection and copying shall be subject to the following:

> (i) The reasonable costs of producing a copy of the public record shall be borne by the party making the request. The costs may include the cost of producing a

copy of the public record and the cost of constructing the record, including the cost of programming and computer services;

(ii) An agency shall provide an electronic record in alternative formats unless doing so is impractical or impossible;

(iii) An agency shall not be required to compile data, extract data or create a new document to comply with an electronic record request if doing so would impair the agency's ability to discharge its duties;

(iv) An agency shall not be required to allow inspection or copying of a record in its electronic format if doing so would jeopardize or compromise the security or integrity of the original record or of any proprietary software in which it is maintained;

(v) Nothing in this section shall prohibit the director of the office of homeland security from enacting any rules pursuant to his authority under W.S. 19-13-104(d)(v).

The WPRA also specifically exempts certain classes of records from inspection, sets out a procedure that allows the custodian to conduct a review of the requested record to make sure that disclosure of the contents of the record would not do substantial injury to the public interest, and sets forth a process by which the custodian can request permission to deny the request. In addition, "[t]he legislature anticipated that records custodians and the public would at times disagree as to whether information was subject to inspection under the Act, and specified a procedure to resolve those conflicts in the district court." *Powder River Basin Res. Council v. Wyo. Oil & Gas Conservation Comm'n*, 2014 WY 37, ¶ 22, 320 P.3d 222, 229 (Wyo. 2014). These procedures are set forth in Wyo. Stat. Ann. § 16-4-203 (LexisNexis 2015), which provides in relevant part:

(a) The custodian of any public records shall allow any person the right of inspection of the records or any portion thereof except on one (1) or more of the following grounds or as provided in subsection (b) or (d) of this section:

(i) The inspection would be contrary to any state statute;

9

(ii) The inspection would be contrary to any federal statute or regulation issued thereunder having the force and effect of law; or

(iii) The inspection is prohibited by rules promulgated by the supreme court or by the order of any court of record.

. . . .

(e) If the custodian denies access to any public record, the applicant may request a written statement of the grounds for the denial. The statement shall cite the law or regulation under which access is denied and shall be furnished to the applicant.

(f) Any person denied the right to inspect any record covered by this act may apply to the district court of the district wherein the record is found for an order directing the custodian of the record to show cause why he should not permit the inspection of the record.

(g) If, in the opinion of the official custodian of any public record, disclosure of the contents of the record would do substantial injury to the public interest, notwithstanding the fact that the record might otherwise be available to public inspection, he may apply to the district court of the district in which the record is located for an order permitting him to restrict disclosure. After hearing, the court may issue an order upon a finding that disclosure would cause substantial injury to the public interest. The person seeking permission to examine the record shall have notice of the hearing served upon him in the manner provided for service of process by the Wyoming Rules of Civil Procedure and has the right to appear and be heard.

[¶18] A review of this statute and case law makes clear that the WPRA "set[s] out the remedies available to one **<u>denied</u>** access to a public record." *Allsop v. Cheyenne Newspapers, Inc.*, 2002 WY 22, ¶ 18, 39 P.3d 1092, 1097 (Wyo. 2002) (emphasis added). When his request was initially denied, Guy could have requested a written statement of the grounds for the denial which cited the law or regulation under which the access was denied, or he could have applied to the district court for an order directing Warden Hargett to show cause why the record could not be inspected. He chose not to

10

pursue either of these remedies and instead attempted to resolve the issue through the prison's internal grievance process.[3] Similarly, when Deputy Director Lindly did not respond to his request within seven (7) days, Guy could have petitioned the district court for a determination as to whether Deputy Director Lindly had demonstrated that good cause existed for the delay. Guy did not pursue this remedy either, and he took no further action on the request he sent to Deputy Director Lindly.

[¶19] A review of the statute also makes clear that the WPRA does not authorize the district court to order the DOC to revise its policies or require its staff to be trained on the application of the WPRA, nor does it authorize the imposition of monetary sanctions through a private suit.[4] This Court will not read remedies into a statute that were not put there by the legislature. Because Guy was ultimately, albeit belatedly, granted access to the record, the WPRA does not afford him any remedies.

[¶20] In addition, Guy's petition asked the district court to declare that a certain class of records, which he titled "WDOC policy," was subject to the WPRA, even though he had not yet filed any requests to inspect those records. Guy's brief asserts that he filed suit because he was seeking to "ensure similar unlawful denials did not transpire." The WPRA does not grant the district court the authority to rule on records requests that have not yet been made. The statute specifically allows a custodian to review the records before releasing them, and it provides the custodians with a procedure for denying the request.[5] Because the WPRA contains these procedures, a district court cannot prospectively declare that a class of records that may be requested sometime in the future will be subject to the WPRA and must be produced upon demand. Courts "ordinarily will not decide as to future or contingent rights, but will wait until the event giving rise to rights has happened, or, in other words, until rights have become fixed under an existing state of facts." *Anderson v. Wyo. Dev. Co.*, 154 P.2d 318, 335 (Wyo. 1944). Because

---

[3] We have previously held that "[p]roceedings to challenge denial of access to documents claimed to be public must follow procedures established by the WPRA . . . ." *Powder River Basin Res. Council*, 2014 WY 37, ¶ 28, 320 P.3d at 230. In *Powder River*, the appellants had been denied access to records they believed to be subject to the WPRA. Instead of bringing a motion for an order to show cause, they filed a petition for review of administrative action and a complaint for declaratory judgment. We held that the appellants had to follow the procedures set forth in the WPRA, and they could not force the disclosure of the records under the Administrative Procedure Act.

[4] The Court notes that Wyo. Stat. Ann. § 16-4-205 does provide that a person who knowingly and intentionally violates the WPRA is liable for a penalty not to exceed seven hundred fifty dollars ($750.00). However, this penalty can only be recovered in a civil action initiated by the attorney general or the appropriate county attorney. It cannot be recovered in a civil suit brought by a private citizen like Guy.

[5] The Court notes that apparently neither Warden Hargett nor Deputy Director Lindly followed this procedure. However, because the record was ultimately produced, the WPRA does not provide any remedies for the delayed production of the document.

11

Guy was asking the district court to rule on requests that he might make in the future, the WPRA did not give the district court the authority to grant the requested relief.

[¶21] For these reasons, the district court correctly concluded that the Appellees were entitled to judgment as a matter of law and that Guy could not have asserted any set of facts that created an entitlement to relief, and it was proper for the district court to dismiss the petition.

## B. *Denial of the Motion to Amend*

[¶22] Although the district court did not expressly rule on Guy's motion to amend before dismissing the petition, we can assume that the judge intended to deny the motion. *See Jasper v. Brinckerhoff*, 2008 WY 32, ¶ 8, 179 P.3d 857, 862 (Wyo. 2008). We must determine if it was an abuse of discretion to implicitly deny the motion.

[¶23] Amendment of the pleadings is governed by W.R.C.P. 15(a), which states that leave to amend "shall be freely given when justice so requires." We have held that the

> "proper test as to what the trial court should consider when an amendment is proffered" to be the following:
>
>> "* * * * If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, **futility of amendment**, etc.—the leave sought should, as the rules require, be 'freely given.' * * *"

*Armstrong v. Hrabal*, 2004 WY 39, ¶ 11, 87 P.3d 1226, 1230-31 (Wyo. 2004) (quoting *Beaudoin v. Taylor*, 492 P.2d 966, 970 (Wyo. 1972)) (emphasis added).

[¶24] In this case, Guy's proposed amendment made only two material changes: 1) it changed the jurisdictional paragraph to reflect that his petition was brought under the UDJA, not the WPRA; and 2) he added a paragraph to the jurisdictional statement alleging that his claims for injunctive relief were authorized by W.R.C.P. 65 and Wyo. Stat. Ann. § 1-28-102 (LexisNexis 2015). We must determine if these changes would have fixed the flaws in Guy's petition.

12

[¶25] Guy's proposed amendment stated that the petition was brought under the UDJA, Wyo. Stat. Ann. § 1-37-101 *et seq.* (LexisNexis 2015). A party's right to have a determination made under the Act is set forth in Wyo. Stat. Ann. § 1-37-103 (LexisNexis 2015), which provides:

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by the Wyoming constitution or by a statute, municipal ordinance, contract or franchise, may have any question of construction or validity arising under the instrument determined and obtain a declaration of rights, status or other legal relations.

[¶26] While the UDJA does allow a district court to declare a party's rights under a statute, we have previously held:

> [t]he Declaratory Judgments Act does not, however, extend the jurisdiction of the courts. . . . Thus, under the relevant statutes, in order for a court to have jurisdiction over a declaratory judgment action, the "right" to be declared must fall within the scope of the act and the plaintiff must be an "interested" person.

*William F. West Ranch, LLC*, ¶ 11, 206 P.3d at 726-27 (citing *Cox v. City of Cheyenne*, 2003 WY 146, ¶ 8, 79 P.3d 500, 505 (Wyo. 2003)). As discussed above, the "rights" that Guy sought to have declared do not fall within the scope of the WPRA. Because the UDJA does not extend the jurisdiction of the district court beyond the scope of the underlying statute, the proposed amendment would not have fixed the petition's fatal flaw.

[¶27] In addition, we have consistently held that there must be a justiciable controversy before relief can be granted under the UDJA. This Court has adopted a four part test to determine whether a justiciable controversy exists:

> 1. The parties have existing and genuine, as distinguished from theoretical, rights or interests.
>
> 2. The controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely political, administrative, philosophical or academic conclusion.

13

3. It must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real parties in interest, or, wanting these qualities to be of such great and overriding public moment as to constitute the legal equivalent of all of them.

4. The proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues.

*William F. West Ranch, LLC*, ¶ 12, 206 P.3d at 727 (quoting *Cox*, ¶ 10, 79 P.3d at 505). Our precedents provide guidance on how these factors should be applied. We have long recognized that the Declaratory Judgments Act gives the courts no power to determine future rights or anticipated disputes or controversies and must treat them as existing and genuine. *Cranston v. Thomson*, 530 P.2d 726, 728-29 (Wyo. 1975); *see also Anderson*, 154 P.2d at 335 ("The [Declaratory Judgments Act] does not require courts to render advisory opinions or to determine moot or theoretical questions."). As discussed above, Guy's petition asked the district court to declare that a certain class of records would be subject to disclosure in the future, even though he had not yet made an actual request to inspect these records. Therefore, he was attempting to have the district court determine his future rights and render an advisory opinion. This was not the proper subject of a declaratory judgment action.

[¶28] Similarly, we have held that "in order for a declaratory judgment to lie, it must be based upon an actual and existing disagreement." *William F. West Ranch, LLC*, ¶ 18, 206 P.3d at 728 (citing *Anderson*, 154 P.2d at 341–42). Guy's petition was based on a past disagreement, which had been resolved when the record was produced. Guy also sought resolution of anticipated future disagreements. Because the petition was not based on an "actual and existing disagreement," it was not the proper subject of a declaratory judgment action.

[¶29] Finally, Guy's petition also sought a declaration that Warden Hargett had violated the WPRA, and he asked the district court to enjoin future violations of the act. This type of relief is not available through a declaratory judgment action. We discussed a similar situation in *Bird v. Rozier*, 948 P.2d 888, 892-93 (Wyo. 1997). In that case, Bird requested a declaratory order setting forth that the appellees had a legal, moral and/or ethical duty to abide by or uphold and enforce the laws of Wyoming and that they violated their duty. We held that although the UDJA authorizes Wyoming courts to declare the rights, status or other legal relations of parties, the court may refuse to render a declaratory judgment where the judgment would not terminate the uncertainty or

14

controversy at issue. *Id.* at 892 (citing Wyo. Stat. Ann. § 1-37-108). We found that Bird had not made a showing that he was entitled to declaratory relief, because "[g]iving or refusing the relief requested in his complaint–a declaration that appellees violated a legal duty to abide by the law, enforce the law, or uphold the law–would have no effect upon the rights, status or legal relationship of Bird and appellees." *Bird*, 948 P.2d at 893. We stated: "In this case, a judgment would have no practical effect on the litigants and would serve no useful purpose." *Id.* The same reasoning applies in this case. A declaration that the Appellees had violated the WPRA and were enjoined from violating the act in the future would have no effect on the rights, status or legal relationship of Guy and the Appellees and would serve no useful purpose. Thus, his claim was not the proper subject of a declaratory judgment action, and granting the proposed amendment would not have allowed Guy to state a set of facts upon which relief could be granted.

[¶30] For these reasons, the district court could have reasonably concluded that the motion to amend should be denied, because the proposed amendment was futile. Therefore, it was not an abuse of discretion for the district court to implicitly deny the motion to amend.

## *CONCLUSION*

[¶31] The relief Guy sought was not available under the WPRA, and the district court correctly found that Appellees were entitled to judgment as a matter of law. Guy did not assert any set of facts that created an entitlement to relief. Therefore, it was proper to dismiss Guy's petition. In addition, Guy's proposed amendment was futile, because it did not fix the petition's fundamental flaws. Thus, it was not an abuse of discretion for the district court to implicitly deny the motion to amend.

[¶32] Affirmed.